Sophia G. Gold (SBN: 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Rachel Soffin (MI Bar No. P89509)
*rsoffin@pwfirm.com*
Kelsey Gatlin Davies
*kdavies@pwfirm.com*
**PEARSON WARSHAW, LLP**
Mailing Address:
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300

Melissa S. Weiner
*mweiner@pwfirm.com*
Ryan T. Gott
*rgott@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSS DELKHASTE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPTUM FINANCIAL, INC. and CONNECTYOURCARE, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ross Delkhaste ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendants Optum Financial, Inc. and ConnectYourCare, LLC (collectively, "Defendants" or "Optum"), and alleges, based on personal knowledge concerning all facts related to himself, and on information and belief concerning all other matters, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, injunctive and declaratory relief from Optum, a third-party administrator that allows companies to outsource their benefits administration for Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage, Flexible Spending Accounts ("FSA(s)") and Health Savings Accounts ("HSA(s)"). COBRA, FSA and HSA benefits are referred to collectively herein as "Health Care Benefit(s)."

2. COBRA is a federal law that allows workers and their family members to temporarily continue their group health coverage for a limited period after losing health coverage due to certain qualifying and often challenging life events, such as job termination, reduced hours, death of the covered employee, divorce, or legal separation.[1]

3. Additionally, and as detailed further herein, FSAs and HSAs are tax-advantaged accounts that allow employees to save money for eligible medical expenses. If an individual experiences a qualifying event and is eligible for COBRA, they may also continue contributing funds to their FSA and HSA, although without the tax advantage. Optum administers FSAs and HSAs for individuals who have also enrolled in COBRA.

4. This action concerns the unfair and deceptive assessment of a uniform $20.00 "Processing Fee" (the "Fee"), which is nothing more than a junk fee that Optum charges to individuals who qualify for COBRA and are desperate to keep their healthcare coverage.

5. Plaintiff, Ross Delkhaste, on behalf of himself and the Class, seeks damages and, among other remedies, and injunctive and declaratory relief, as described in more detail below.

///

---

[1] References herein to COBRA health coverage/insurance is inclusive of medical, health and vision insurance, including adjacent benefits like health saving accounts and flexible saving accounts.

## PARTIES

6. Plaintiff is a resident and citizen of San Francisco, California.

7. Defendant Optum Financial, Inc. is a Delaware corporation and has its principal place of business in Eden Prairie, Minnesota. In conjunction with Defendant ConnectYourCare, LLC, Defendant Optum Financial, Inc., operates as a third-party administrator and offers an online platform for consumers to manage their COBRA healthcare benefits.

8. Defendant ConnectYourCare, LLC is a Maryland limited liability company and a wholly owned subsidiary of Optum Financial, Inc.[2] In conjunction with Defendant Optum Financial, Inc., Defendant ConnectYourCare, LLC, operates as a third-party administrator and offers an online platform for consumers to manage their COBRA healthcare benefits.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

a. the proposed Class is comprised of at least 100 members, § 1332(d)(5)(B);

b. at least one member of the proposed class is a citizen of a State other than California, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. §§ 1332(d)(2), (6).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Optum is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

///

///

///

///

---

[2] Optum Financial Portal, OptumFinanical.com, https://secure.optumfinancial.com/portal/CC (last accessed September 9, 2026).

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. Consolidated Omnibus Budget Reconciliation Act - COBRA

10. COBRA applies when a person experiences a qualifying event that results in the loss of employer-sponsored health coverage, such as job termination, reduced hours, death of the covered employee, divorce or legal separation.

11. COBRA allows people to keep their existing group health plan and apply any deductibles they paid while at their job, which prevents the need to start over with a new deductible, find a new plan or change doctors—which is especially important when a person is receiving medical treatment and is faced with losing medical coverage due to a job loss or another qualifying event.

12. Further, COBRA continuation coverage allows workers who separated from their jobs to continue their employer-sponsored health insurance for up to 18 or 36 months, depending on the reason for the separation.

13. In typical circumstances, the cost of health insurance premiums under COBRA is paid entirely by the worker. Given the costs of insurance coverage, this is a significant financial burden.

14. By way of example, the average monthly cost of COBRA insurance premiums can be more than $700.00 per month for individual coverage, or more than $2,000.00 per month for family coverage.[3]

15. Given the high cost of COBRA coverage— and that circumstances for people paying for COBRA are subject to change— COBRA plans must allow qualified beneficiaries to pay the required premiums on a monthly basis and may allow payments at other intervals (for example, weekly or quarterly).

16. During this stressful time for individuals concerned about losing health coverage, the maximum amount that can be charged to COBRA participants cannot exceed the cost of coverage for the individual or their family through the group health plan, plus a 2% administrative charge, or 102% of the cost of coverage.

---

[3] *See* Cobra Insurance, Fidelity.com, https://www.fidelity.com/learning-center/smart-money/cobra-insurance (last accessed September 28, 2025).

17. Further, COBRA continuation coverage also allows workers going through these difficult circumstances to continue contributing funds to their FSA and HSA if they experience a qualifying event and are eligible for COBRA.

18. In addition to offering direct pay solutions for former employees making payments for COBRA coverage, Optum also offers direct pay solutions for former employees who are eligible for COBRA and are also contributing funds to their FSA and HSA.

19. The FSA is a use-it-or-lose-it account, meaning that an individual may not be able to access their FSA funds if they are terminated. However, continuing an FSA through COBRA allows a former employee to access the full FSA funds after termination. Thus, if a former employee elects and receives COBRA coverage, they are eligible to use their FSA funds through the end of the plan year as if they were still employed.

20. For example, as Optum explains, FSA accounts have a "Run-out Period," which "is a specified period of time after the end of the plan year, or following your termination in the plan, in which you may continue to submit claims incurred during your period of coverage. This is not a period when you are able to continue to incur new expenses, rather it allows you time to gather and submit expenses before forfeitures are applied."[4]

21. An HSA is a type of savings account that allows individuals with HSA-eligible health plans to set aside money to pay for health care costs. An HSA is portable and travels with the employee after termination, regardless of whether COBRA coverage is continued. However, an individual can pay COBRA premiums with HSA funds.

22. In its marketing and advertising materials, Optum discusses the continuation of health benefits with COBRA:

> If you have been laid off or furloughed and your company coverage ends, you and your covered dependents may be eligible to continue medical, dental, and/or vision coverage through the Consolidated Omnibus Budget Reconciliation Act (COBRA). If you are experiencing a qualifying event for COBRA, such as termination or reduction

---

[4] Common questions about FSAs, Optum.com, https://www.optum.com/content/dam/optum/consumer-activation/PRJ1953/FSA_FAQs_mycdh.pdf (last accessed September 28, 2025).

> of hours, becoming familiar with how your benefits package works during this transitionary period is important.[5] (cleaned up).

23. For FSAs, Optum states that when an individual qualifies for COBRA, they may also continue their FSA coverage:

> If you are terminated or leave before the end of a plan year, and do not elect to continue participating in your FSA through COBRA, only those qualified expenses incurred in the current calendar year through your last day worked are eligible for reimbursement and must be submitted by the end of the run out period.
>
> You may extend coverage by participating in the health care FSA through COBRA, and will then make after-tax contributions to the FSA along with any other payments for COBRA coverage. You will be direct billed for this coverage from the COBRA administrator. You can then continue submitting qualified health care expenses that you have incurred anytime while you have coverage.[6]

24. For HSAs, Optum states that when an individual's employment is terminated, they may also continue depositing funds into their HSA account or pay their COBRA premiums with their HSA funds:

> If you are terminated or discontinue your employment your HSA will remain active and health account funds accessible. The account is yours to keep, and you can continue to carry over available or remaining funds from year to year. You can contribute directly to your HSA account through Optum Bank, but cannot participate through COBRA. [7]

25. FSA and HSA funds can be used for a variety of expenses, including health care expenses, like medical, dental, vision, hearing, and prescription expenses, plus copays, coinsurance, and over-the-counter items.[8] Indeed, FSA and HSA funds may be used to purchase a litany of items including those sold through Optum Now, an online health and wellness store owned by Optum's parent company, UnitedHealth Group, like pain relief devices, skin care devices, health tracking products, and vitamins and supplements. [9]

---

[5] Health and finances: More connected than ever, Optumbank.com, https://www.optumbank.com/content/dam/optum3/optumbank3/resources/pdf/cobra-informational-flyer-general.pdf (last accessed September 28, 2025).
[6] *Id.*
[7] *Id.*
[8] Now.Optum.com, https://now.optum.com/qualified-expenses (last accessed September 28, 2025).
[9] *Id.*

## II. Benefits Administration is Big Business for Optum

26. Optum describes itself as "the only financial institution owned by a health care company," which "transforms how employers and employees save, spend, invest and pay for health care."[10] Further, Optum touts that "[w]e're making COBRA easier to navigate. From compliance to payments, Optum Financial is here to handle the details. Get expert support, real-time tools, and peace of mind — so you can focus on your people and not their paperwork."[11] Even more, Optum claims that "[o]ur team of COBRA administration service experts will assist with day-to-day COBRA operations, such as elections, notices, payment receipt/disbursement and communication to plan sponsors" and that Optum "take[s] the guesswork out of COBRA administration by providing fully compliant, trackable communications and on-demand, online transparency."[12]

27. When an employer uses Optum's services and subsequently, has an employee that is terminated or otherwise eligible for Health Care Benefits under COBRA, the employer informs Optum of a qualifying event, and Optum purports to administer the notice and other requirements of COBRA and related Health Care Benefits. This includes communicating to eligible employees or former employees their option to continue group health coverage and the cost to the individual of such coverage and collecting Health Care Benefit monthly insurance premiums.

28. Health Care Benefits administration is big business for Optum. Indeed, Optum "processes more than $500 billion in healthcare payments annually,"[13] which generates substantial revenues, including the $20.00 junk fee that is the subject of this action.

29. When consumers make their monthly Health Care Benefit premium payments online (such as a COBRA, FSA or HSA premium), Optum tacks on a $20.00 Fee to all onetime monthly

---

[10] Optum Financial, ease.com, https://www.ease.com/marketplace/optum-financial/ (last accessed September 28, 2025).

[11] COBRA Administration for Employers, Business.Optum.com, https://business.optum.com/en/financial-solutions/health-benefit-accounts/cobra-administration.html (last accessed September 28, 2025).

[12] *Id.*

[13] Q&A: How Optum Financial is modernizing healthcare payment delivery, Business.Optum.com, https://business.optum.com/en/insights/how-optum-financial-modernizing-healthcare-payment-delivery.html (last accessed September 28, 2025).

premium payments, regardless of the form of payment (ACH, debit or credit card) or the amount of the payment.

30. Thus, consumers making one-time monthly premium payments online are unable to avoid the $20.00 Fee, regardless of payment method or the payment amount.

31. Worse yet, throughout the entirety of the COBRA sign-up or Health Care Benefits payment process for deposits into their FSA and HSA, Optum fails to reasonably or adequately inform consumers that the Fee will be charged or disclose reasonable alternatives to paying the Fee. Reasonable consumers like Plaintiff proceed to checkout without becoming aware of Optum's processing fee.

32. The $20.00 Fee is a great financial benefit to Optum at the expense of consumers making an already large insurance premium payment during a stressful time in their lives.

33. Optum profits from the Fee in spite of federal law making its flat $20.00 Fee unlawful. As detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

34. In other words, federal law mandates that consumers can only be charged a maximum 2% fee as compensation for all administrative tasks associated with COBRA continuing health coverage.

35. For example, if the total cost of the health plan is $700.00, then the COBRA participant cannot be charged more than a $14.00 fee ($700.00 x .02) in addition to the $700.00 for coverage, for a total cost of $714.00 to access that coverage.

36. However, not only does Optum fail to timely and adequately notify reasonable consumers of the $20.00 Fee or adequately disclose reasonable alternatives to paying the $20.00 Fee, Optum charges administrative fees in excess of the 2% cap to consumers paying for continuing health coverage under COBRA.

37. Specifically, the $20.00 Fee Optum charges to consumers making monthly COBRA premium payments is in addition to— and in excess of the federally allowed— 2% administrative fee already being paid by consumers.

38. Thus, for COBRA coverage, the Fee is purportedly for a "service"—the administration of COBRA continuing health benefits—that the employer and Optum are already compensated for in the form of the 2% administrative fee authorized by COBRA.

**III. <u>Optum's Fee Scheme</u>**

39. Consumers who wish to continue their health coverage pursuant to their rights under COBRA must make timely monthly premium payments (whether for their COBRA coverage, FSA or HSA). Failure to do so has dire consequences, including termination of healthcare coverage.

40. When an employer's Health Care Benefits are administered through Optum, consumers make their monthly payments directly to Optum through the Optum online portal, available at https://cobra.optumfinancial.com/. Consumers often choose to make their Health Care Benefits payments online to avoid missing the benefits election deadline, or to avoid the risk of a check getting lost in the mail, or upon reaching its destination, which could result in lost coverage if it is not timely received.

41. As detailed above, when consumers make their monthly Health Care Benefit premium payments online, Optum tacks on a $20.00 Fee to all one-time monthly premium payments, regardless of the form of payment (ACH, debit or credit card) or the payment amount.

42. As occurred with Plaintiff, this add-on fee significantly increases health care costs for people who are already struggling to survive a difficult period of unemployment.

43. The Fee is simply the exploitation of an opportunity to gouge already struggling consumers who are desperate to keep their health care coverage for themselves and their families.

44. Worse yet, as detailed above, throughout the entirety of the online Health Care Benefit sign up process and monthly payment process, Optum fails to reasonably inform consumers that the Fee will be charged. Reasonable consumers like Plaintiff proceed to checkout without becoming aware of the Fee assessed by Optum.

45. Then, at checkout—and only after consumers have completed a comprehensive sign-up process— Optum tacks on the Fee.

46. The Fee is presented to consumers as mandatory. If there are alternative means to avoid the Fee, Optum fails to reasonably inform consumers of alternative forms of payment to avoid the Fee.

47. To make matters worse, consumers looking to pay multiple months' premiums online are unable to do so in a single payment and must pay each month's premium in multiple payments. Therefore, even if a consumer desires to pay six months of premium payments on the same day, they must make six separate online payments, resulting in $120.00 in unavoidable Fees.

48. As a result of Optum's unfair and deceptive conduct, Plaintiff and the Class suffered damages.

## IV. Optum's Fee is a Junk Fee that Violates California Law and Federal Guidance

49. Optum's Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[14]

29. As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[15]

---

[14] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://www.whitehouse.gov/cea/writtenmaterials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-underminecompetition/#_ftnref3. (last accessed September 28, 2025).

[15] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees. (last accessed September 28, 2025).

50. California recently expanded its Consumers Legal Remedies Act ("CLRA") via amendment to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the amended California law, it is illegal to advertise a low price for a product or service, only for that product or service to be subject to additional or mandatory fees later.

51. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the Federal Trade Commission ("FTC") makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart."[16]

52. Optum violates California law and federal guidance by adding the processing fee to a consumer's online transaction after a consumer "add[s] to shopping cart," and by failing to disclose the nature of its processing fee and whether consumers are getting any benefit at all from the Fee charged.

53. In addition, there is no actual "processing" performed where the employer already pays for Optum's service.

54. The Fee thus provides no additional value to consumers, and is instead, a classic "junk fee."

55. Optum imposes inadequately disclosed, deceptive, and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, Optum engineered a "pay junk fees to get health care" scheme. Consumers believe that, in order to maintain health coverage, they must pay the processing fee unilaterally imposed by Optum.

---

[16] Fed. Trade Comm'n, .com Disclosures: *How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-onlineadvertising-disclosure-guidelines/130312dotcomdisclosures.pdf. (last accessed September 28, 2025).

**V. <u>Plaintiff Delkhaste's Experience</u>**

56. Plaintiff Delkhaste's former employer used Optum to offer him federally mandated Health Care Benefits. Plaintiff Delkhaste was thus forced to use Optum to receive his COBRA benefits and was unable to choose a different administrator.

57. Plaintiff Delkhaste enrolled in COBRA in April 2025, for medical and dental coverage, and to continue contributing to his FSA.

58. Plaintiff Delkhaste's premium for his medical coverage was $710.86. His premium for his dental coverage was $43.73. Finally, Plaintiff Delkhaste's premium for his FSA was $170.00. In total, the cost of these three Health Care Benefits was $924.59 per month.

59. On May 5, 2026, Plaintiff Delkhaste made a payment on Optum's online payment portal for his Health Care Benefits, including medical and dental coverage, and his FSA, to ensure continued coverage.

60. Plaintiff Delkhaste submitted his May 5, 2026, payment by ACH transfer.

61. For this payment, Plaintiff Delkhaste incurred a $20.00 Fee. Specifically, the total amount he was charged was $944.59.

62. Prior to signing up for COBRA and accessing Optum's online payment portal, Plaintiff Delkhaste was unaware of the OPP Fee.

63. When Plaintiff Delkhaste first learned of the OPP Fee after accessing Optum's online payment portal, he believed he had no choice but to incur the OPP Fee in order to timely pay his health insurance premium and maintain his health care coverage.

64. Plaintiff Delkhaste saw and relied upon Optum's representations and omissions regarding: (1) the cost for his Health Care benefits; (2) the purpose and lawfulness of the Fee; (3) the exclusive means to pay for his Health Care Benefits and pay the Fee; and (4) the untimely and misleading disclosure of the Fee.

65. As a result, Plaintiff Delkhaste sustained economic injury by paying the unreasonable and unlawful Fee.

///

///

## VI. OPTUM'S TERMS OF USE AND APPLICATION OF MINNESOTA LAW

66. Optum publishes Terms of Use governing the use of its Optum Financial websites and online services, including the online platform through which Plaintiff and Class Members paid for their Health Care Benefits and were charged the Fee.[17]

67. Upon information and belief, Optum drafted the Terms of Use unilaterally, presents them on a take-it-or-leave-it basis, and applies them uniformly to all consumers who use its online platform, regardless of the consumer's state of residence.

68. The Terms of Use contain a choice-of-law provision selecting the laws of the State of Minnesota to govern the Terms and the users' relationship with Optum arising from use of Optum's online services.

69. Plaintiff does not concede that the Terms of Use are valid, binding, or enforceable against Plaintiff or Class Members, including because Optum did not provide reasonable notice of the Terms or obtain Plaintiff's or Class Members' assent to them, and Plaintiff expressly reserves all rights to challenge the enforceability of the Terms or any provision thereof. However, to the extent the Terms of Use govern the relationship between Optum and Plaintiff and Class Members, it is proper to apply Minnesota law to the claims of Plaintiff and the Nationwide Class, as Optum itself selected Minnesota law to govern that relationship.

70. Application of Minnesota law to the claims of the Nationwide Class is also appropriate because Optum Financial, Inc. maintains its principal place of business in Eden Prairie, Minnesota, and, upon information and belief, the decisions regarding the design, imposition, amount, and disclosure of the Fee were made and directed from Minnesota. Minnesota therefore has a significant contact, or significant aggregation of contacts, with the claims of each Class Member, such that application of Minnesota law is neither arbitrary nor fundamentally unfair.

## FED. R. CIV. P. 9(b) ALLEGATIONS

71. Optum is in the best position to know what content it placed on its website(s) during the relevant timeframe and the knowledge it had regarding its Fee and related disclosures. To the

[17] *See* Terms of Use, Optum Financial, https://www.optum.com/en/financial-services/terms-of-use.html (last accessed Oct. 14, 2026) (the "Terms of Use" or "Terms").

extent necessary, Plaintiff satisfies the requirements of Federal Rule 9(b) by alleging the following facts with particularity:

72. **WHO**: Optum unfairly, deceptively, and/or misleadingly imposed the Fee on consumers paying for Health Care Benefits, including premium payments for COBRA, and when consumers who are receiving COBRA coverage make deposits into their FSAs and HSAs.

73. **WHAT**: Optum's conduct was, and continues to be, fraudulent because it hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying for Health Care Benefits. Optum's conduct deceived Plaintiff and Class Members into believing that the Fee is mandatory when paying for Health Care Benefits, when in reality, the Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Optum required Plaintiff and Class Members to make Health Care Benefits through its online payment platform where it then imposed the Fee. Optum charged the Fee to all consumers paying for Health Care Benefits using an electronic payment method. Optum failed to post, display or otherwise adequately disclose the Fees to COBRA recipients during the COBRA sign up process or FSA and HSA deposit process. Optum knew, or should have known, that it failed to adequately disclose the Fee and that this Fee—including the excessive amount of the Fee—is material to reasonable consumers, including Plaintiff and Class Members. The Fee is a sham, a classic "junk fee." The "processing" purportedly provided by Optum, which is allowing consumers to pay for the health coverage they are entitled to is a core aspect of the service Optum (and the employers that use Optum) are federally required to provide. The Fee is merely a second payment—in the form of a junk fee—for the service that consumers are already paying for.

74. **WHEN**: Optum engaged in these unfair, deceptive or otherwise misleading practices during the putative Class periods, at the time Plaintiff and Class Members paid for their Health Care Benefits through Optum's online platform, prior to and at the time Plaintiff and Class Members made claims after realizing the existence of the unlawful junk fee, and continuously throughout the applicable Class periods.

75. **WHERE**: Optum's unfair and deceptive junk fee was uniformly applied to consumers who paid for Health Care Benefits through Optum's online platform. Optum's website failed to adequately explain or otherwise disclose the nature of the Fee being charged.

76. **HOW**: Optum hid, obfuscated or otherwise concealed from consumers its imposition of the Fee by describing the junk fee as an "Processing Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Fee through their own investigation, Optum failed to explain or adequately disclose the nature of the Fee or reasonable alternatives to paying this fee, or why it was imposed.

77. **WHY**: Optum engages in its unfair and deceptive junk-fee scheme to induce Plaintiff, Class Members, and all reasonable consumers to pay the undisclosed and unlawful Fee, resulting in substantial profit for Optum, resulting in profits in the millions of dollars.

78. **INJURY**: Plaintiff and Class Members paid a premium or otherwise paid more for Health Care Benefits than they otherwise would have absent Optum's misrepresentations and omissions.

## CLASS ALLEGATIONS

79. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following classes (collectively referred to as the "Classes" or the "Class"):

> **Nationwide Class**: During the fullest period allowed by law, all persons in the United States who were charged the Fee by Optum in relation to Health Care Benefits (the "Nationwide Class").
>
> **California Class**: During the fullest period allowed by law, all persons who were charged the Fee by Optum in relation to Health Care Benefits while residing in the State of California (the "California Class").

80. The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Optum, Optum's subsidiaries, parents, successors, predecessors and any entity in which Optum or its parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on

the merits or otherwise released; (5) Plaintiff's counsel and Optum's counsel; and (6) the legal representatives, successors and assigns of any such excluded persons.

81. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including by adding subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or facts obtained in discovery.

82. This action has been brought and may properly be maintained as a class action against Optum because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

83. **Numerosity:** While Plaintiff does not know the exact size of the Class but estimates that it is composed of thousands of persons as Optum serves as administrator for more than 58,000 employers.[18] The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of its claims in a class action rather than in individual actions will benefit the parties and the courts.

84. **Common Questions Predominate:** This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the deceptive, unlawful and/or unfair Fees. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Classes are:

a. Whether Minnesota law applies to the claims of the Nationwide Class;

b. Whether Optum uniformly charged the Fees to members of the Class;

c. Whether Optum's assessment of Fees was unfair, deceptive or unlawful;

d. Whether Optum's conduct violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69;

e. Whether Optum adequately disclosed its imposition of the Fees;

f. Whether the Fees would be misleading to the reasonable consumer;

---

18 https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2024/ic24/IC24_Optum_Overview_All.pdf

g. Whether Optum's violations of the law were committed knowingly and/or intentionally;

h. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Optum's conduct;

i. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

j. Whether Plaintiff and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

85. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Optum in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Optum's wrongful conduct in violation of the law as alleged herein.

86. **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of all Class Members because it is in Plaintiff's best interest to prosecute the claims alleged herein to obtain full compensation due to Plaintiff for the unfair and illegal conduct of which Plaintiff complain. Plaintiff also have no interest that conflicts with, or is antagonistic to, the interests of the Class. Plaintiff retained highly competent and experienced class action attorneys to represent Plaintiff and the interests of the Class. By prevailing on their own claims, Plaintiff will establish Optum's liability to all members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to litigate this class action adequately and vigorously. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

87. **Superiority:** There is no plain, speedy or adequate remedy other than by maintenance of this class action. Individual actions by members of the Class seeking individual remedies will tend to establish inconsistent standards of conduct for Optum and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

88. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

89. **Injunctive/Declaratory Relief:** The elements of Rule 23(b)(2) are met. Optum will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be deceived by Optum's deceptive practices. Optum acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

90. Optum has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate corresponding public injunctive relief with respect to the Class as a whole.

91. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
***(On Behalf of Plaintiff and the California Class)***

92. Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 91 as if fully set forth herein.

93. Optum's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

94. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive

provisions in broad, sweeping language.

95. The UCL imposes strict liability. Plaintiff need not prove that Optum intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

96. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

97. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

98. A business act or practice is "unlawful" under the UCL if it violates another law or regulation.

99. Optum committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by affirmatively and knowingly misrepresenting the presence and nature of its Fees.

100. Optum's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

101. The harm to Plaintiff and the California Class outweighs the utility of Optum's practices. There are reasonably available alternatives to further Optum's legitimate business interests, other than the misleading and deceptive conduct alleged herein.

102. Optum's conduct is also "unlawful" under the UCL because, as alleged below, it violates California's Consumers Legal Remedies Act.

103. Optum's business practices have misled Plaintiff and the proposed California Class and, unless enjoined, will continue to mislead them in the future.

104. At all times relevant, Optum had a duty to disclose full and accurate information regarding its services to Plaintiff and California Class.

105. Plaintiff and the California Class reasonably relied on Optum's misrepresentations and

omissions as alleged herein in making their payments.

106. Optum deceived Plaintiff and the California Class into paying the Fees they should not have to pay.

107. As a direct and proximate result of Optum's unfair, fraudulent, and unlawful practices, Plaintiff and the California Class suffered and will continue to suffer actual damages. Optum's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and the California Class that they will be deceived. Plaintiff is still on COBRA and therefore must continue to use Optum as his COBRA benefits administrator but cannot rely on Optum's representations unless an injunction is issued.

108. Optum's wrongful conduct is ongoing and is part of a pattern of conduct repeated on thousands of occasions yearly.

109. As a result of its unfair, fraudulent, and unlawful conduct, Optum has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and the California Class pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

110. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the California Class, on behalf of the general public, seek an order of this Court enjoining Optum from continuing to engage, use, or employ their unfair, unlawful and fraudulent practices.

111. Plaintiff may be subject to the same wrongful conduct in the future unless Optum is enjoined. Plaintiff has no adequate remedy at law, in part, because Optum continues to automatically add Fees to each payment made on its platform.

112. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff therefore seeks an injunction on behalf of the general public enjoining Optum from continuing to engage in the unfair, fraudulent, and unlawful business practices described above, or any other act prohibited by law.

113. Additionally, Plaintiff and the California Class seek an order requiring Optum to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

///

///

///

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
***(On Behalf of Plaintiff and the California Class)***

114. Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 91 as if fully set forth herein.

115. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*.

116. Plaintiff and each member of the proposed California Class are "consumers" as defined by California Civil Code § 1761(d).

117. Optum's sale of COBRA benefits and imposition of the Fee to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The benefits purchased by Plaintiff and the California Class are "services" within the meaning of the statute.

118. Optum violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of COBRA health benefits:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised"

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. “Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges” (a)(29).

119. When consumers make their monthly COBRA premium payments online, Optum tacks on a $20.00 Fee to all one-time monthly premium payments, regardless of the form of payment and the amount of payment.

120. At no time does Optum disclose the true nature of its Fee; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

121. Specifically, Optum advertises, displays and offers to customers that they will pay one price throughout the COBRA sign up process and in making premium payments, but this is false because Optum applies mandatory Fees at the very end of the registration process.

122. Throughout the entirety of the COBRA sign up process, Optum fails to reasonably inform consumers that the Fee will be charged. Reasonable consumers like Plaintiff and California Class Members proceed to checkout without ever becoming aware of the Fee assessed by Optum.

123. At checkout, Plaintiff and the California Class making one-time monthly premium payments online are unable to avoid this Fee, regardless of payment method, and are not reasonably informed of alternative payment methods to avoid the Fee.

124. In addition, as detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

125. However, the Fee is in addition to the maximum 102% cost of insurance coverage that consumers can be charged for COBRA.

126. Consumers, including Plaintiff and the California Class, are deceived into paying an unexpected, misleading and unlawful Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the Fee.

127. The existence and nature of the Fee was not detectible to Plaintiff and the California Class in a timely, reasonable or appropriate manner.

128. Optum misrepresented facts that are material to Plaintiff and the California Class in signing up for COBRA, when making premium payments and when determining the means of

payment. Optum's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and the California Class.

129. Optum imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, Optum engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must they pay the Fee unilaterally set by Optum.

130. At all times, Optum actively and intentionally misrepresented the existence and nature of the Fee throughout the COBRA sign up process and when making premium payments.

131. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Optum in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Optum's intent to act. Plaintiff informed Optum that if it failed to respond to Plaintiff's letters or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Optum.

132. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the Class, seeks injunctive relief, including an order to enjoin Optum from continuing its deceptive advertising and sale practices.

## <u>THIRD CLAIM FOR RELIEF</u>

**Unjust Enrichment /Quasi-Contract**

***(On Behalf of Plaintiff and the Nationwide Class)***

133. Plaintiff, individually, and on behalf of the Nationwide Class, realleges paragraphs 1 through 91 as if fully set forth herein.

134. As set forth in this Complaint, Optum's unfair and unlawful conduct includes, among other things, making materially false, deceptive and misleading representations about the Fee throughout the COBRA sign up process and premium payment process. Optum's acts and business practices offend the established public policy of Minnesota, as well as federal law, and there is no public benefit that comes from such false marketing and advertising—only harm.

135. Optum misrepresented facts that are material to Plaintiff and Class Members in signing up for COBRA, when making premium payments and when determining the means of payment. Optum's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.

136. Optum imposes inadequately disclosed deceptive and unfair Fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, Optum engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must pay the Fee unilaterally set by Optum.

137. When consumers make their monthly COBRA premium payments online, Optum tacks on a $20.00 Fee to all one-time monthly premium payments, regardless of the form of payment and the amount of payment.

138. Throughout the entirety of the COBRA sign up process, Optum fails to reasonably inform consumers that the Fee will be charged. Reasonable consumers like Plaintiff and Class Members proceed to checkout without ever becoming aware of the nature and purpose of the Fee assessed by Optum.

139. At checkout, consumers making one-time monthly premium payments online are unable to avoid this Fee, regardless of payment method, and are not timely or reasonably informed of alternative payment methods to avoid the Fee.

140. In addition, as detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

141. However, the Fee is in addition to the maximum 102% cost of insurance coverage that consumers can be charged for COBRA.

142. Consumers, including Plaintiff and Class Members, are deceived into paying an unexpected, misleading and unlawful Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the Fee.

143. The existence and nature of the Fee was not reasonably detectible to Plaintiff and Class Members.

144. At all times, Optum actively and intentionally misrepresented the existence and nature of the Fee throughout the COBRA sign up process and when making premium payments.

145. While Plaintiff and Class Members were harmed at the time of payment of the Fee, Optum was unjustly enriched by its misrepresentations and omissions. As a result of Optum's unlawful, unfair and fraudulent business practices, Plaintiff and Class Members suffered injury.

146. To Optum's benefit and enrichment, it knowingly realized substantial revenue from charging the Fee at the expense of, and to the detriment of, Plaintiff and Class Members. Optum's retention of these benefits violates fundamental principles of justice, equity and good conscience. Plaintiff and the Class Members conferred significant financial benefits and paid substantial compensation to Optum to sign up for COBRA and make premium payments, which are not as Optum represents.

147. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Optum to retain the benefits conferred by Plaintiff and Class Members' overpayments, encompassing the Fee.

148. As such, Plaintiff and Class members seek disgorgement of all profits resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## FOURTH CLAIM FOR RELIEF

**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. §§ 325F.68, *et seq.*, and Minn. Stat. § 8.31, subd. 3a)**
***(On Behalf of Plaintiff and the Nationwide Class)***

149. Plaintiff, individually, and on behalf of the Nationwide Class, realleges paragraphs 1 through 91 as if fully set forth herein.

150. As alleged above, Plaintiff does not concede that Optum's Terms of Use are enforceable, but to the extent they govern, Minnesota law applies to the claims of Plaintiff and the Nationwide Class.

151. The Minnesota Prevention of Consumer Fraud Act ("MCFA") provides that "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that

others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable." Minn. Stat. § 325F.69, subd. 1.

152. Optum Financial, Inc. and ConnectYourCare, LLC are each a "person" within the meaning of Minn. Stat. § 325F.68, subd. 3.

153. The Health Care Benefits administration and payment-processing services Optum offers and sells to consumers, including the purported "processing" for which it charges the Fee, constitute "merchandise" within the meaning of Minn. Stat. § 325F.68, subd. 2, which includes services.

154. Optum violated the MCFA by engaging in fraudulent, unfair, unconscionable, misleading, and deceptive practices in connection with the sale of its services, including by: (a) failing to timely and adequately disclose the Fee before consumers completed the Health Care Benefits sign-up and payment process; (b) presenting the Fee as mandatory while failing to disclose reasonable alternative means of payment to avoid it; (c) misrepresenting and concealing the nature and purpose of the Fee by labeling it a "Processing Fee" when no additional processing is performed and Optum is already compensated for its services; and (d) charging the Fee in addition to, and in excess of, the maximum 2% administrative charge permitted for COBRA continuation coverage.

155. Optum intended that Plaintiff and Nationwide Class Members rely on its misrepresentations and omissions regarding the cost of their Health Care Benefits and the existence, nature, and lawfulness of the Fee, so that they would pay the Fee.

156. Optum's omissions are actionable because Optum had special knowledge of material facts regarding the Fee to which Plaintiff and Nationwide Class Members did not have access, and because Optum's partial disclosures regarding the cost of Health Care Benefits were misleading absent disclosure of the Fee.

157. Plaintiff and Nationwide Class Members were injured as a direct and proximate result of Optum's violations of the MCFA, including by paying the Fee, which they would not have paid had Optum adequately disclosed it, its nature, and reasonable alternatives to it. A causal nexus exists between Optum's conduct and the injuries suffered by Plaintiff and Nationwide Class Members.

158. This action benefits the public. Optum's misrepresentations and omissions were disseminated uniformly to the public at large through its online platform, affecting thousands of consumers nationwide who rely on Optum to maintain their health coverage, and Plaintiff seeks relief, including injunctive relief, that will prevent Optum from continuing to deceive the public.

159. Pursuant to Minn. Stat. § 8.31, subd. 3a, and Minn. Stat. § 325F.70, Plaintiff and the Nationwide Class seek actual damages, injunctive relief, costs and disbursements, including costs of investigation, reasonable attorneys' fees, and such other equitable relief as the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of himself and those similarly situated, respectfully requests that the Court enter judgement against Optum as follows:

(a) Certification of the proposed Classes, including appointment of Plaintiff's counsel as class counsel;

(b) An award of monetary relief, including actual, compensatory, statutory, treble, punitive damages and/or restitution as permitted by applicable law;

(c) An award of non-restitutionary disgorgement of profits in an amount to be determined at trial;

(d) An order requiring Optum to pay both pre- and post-judgment interest on any amounts awarded;

(e) For reasonable attorneys' fees and the costs of suit incurred; and

(f) For such further relief as this Court may deem just and proper. .

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable.

Dated: October 14, 2026

**KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*

Sophia G. Gold (SBN: 307971)
**KALIELGOLD PLLC**

490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Rachel Soffin (MI Bar No. P89509)
*rsoffin@pwfirm.com*
Kelsey Gatlin Davies
*kdavies@pwfirm.com*
**PEARSON WARSHAW, LLP**
Mailing Address:
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300

Melissa S. Weiner
*mweiner@pwfirm.com*
Ryan T. Gott
*rgott@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600

*Attorneys for Plaintiff and the Putative Class*